May it please the Court, Peggy Ruffray from the Attorney General's Office for the respondent in this case. And I guess you've been made aware that Mr. Schmidt is sick this morning and will not be appearing? Correct. Okay. So you're standing for argument for the appellee, but you don't know what the appellant said? Correct. All right. Other than what was in his brief? Yes. It's our position that the district court's conclusion that Mr. Orthel was not entitled to equitable tolling because he failed to show he was mentally incompetent for this entire 11-year period was not clearly erroneous and should be upheld. The mental health records that we submitted demonstrated that Mr. Orthel was not just competent, but actually high-functioning for eight years after the statute of limitations commenced. And that's shown by the facts that he had a prison job recording books on tape for the blind, which I didn't know was even available in prison, but is obviously a very high-functioning level prison job. It requires the ability to do the technical aspects of recording as well as competently reading a book on tape. He also completed 24 units of college classes and made the honor roll, which when I took a college class by correspondence long ago required getting the reading materials, reading those, completing homework assignments, mailing back the written requirements, and he completed 24 units while he was in prison during that time. He also worked in a vocational electronics class. He competently filled out written health care services request forms for various medical services within the prison. He considered pursuing a paralegal degree. He read voraciously, including The New Yorker. He apparently joined a class-action lawsuit, although that's not verified. But if that is, in fact, the case, then he actually accessed counsel during that eight-year period. We have these two cases, interestingly enough, that came out, I think, within weeks of each other. One is Roberts v. Marshall, and the other one is Bills v. Clark. You're obviously familiar with them. Yes. Can they be reconciled? And if they can be, how would you reconcile them? Well, I think they can definitely be reconciled. In the Roberts case, that's the one that I think is the closest to this, where the court was the district court was presented with comprehensive records of the prisoner's mental health status during the time at issue. And the court reviewed all of those records, and the prisoner was consistently described as being within normal limits. His cognitive functioning and his insight, his judgment, everything about it showed that even though he had been diagnosed with a mental illness, his actual functioning was fine. And the Ninth Circuit said that that was a proper conclusion, and that no evidentiary hearing was required under those circumstances, because the records were sufficient to draw that conclusion. I take it from what you're saying that the way you would reconcile these two cases to say that while one seems to establish a requirement for an evidentiary hearing, the other one suggests is if there's sufficient evidence of record from which a neutral and detached finder of fact could make a determination, then it's okay not to have a hearing. Yes. Although I would go even further, as far as the Bills case go, I don't think that case requires an evidentiary hearing. It was a slightly different posture because there had already been a hearing in the district court when the case came up to the Ninth Circuit. And in that case, the only time the requirement of an evidentiary hearing is mentioned is in this one section where it's a little bit unclear what the court even meant by it. The court said in practice to evaluate whether a Petitioner is entitled to equitable tolling, the district court must, one, find the Petitioner has made a non-frivolous showing that he had a severe mental impairment during the period that would entitle him to an evidentiary hearing. But then they go on to say, two, determine after considering the record whether he satisfied his burden and so on, then there's four requirements there. The only way I read that is to suggest that there may be a need for an evidentiary hearing if there is a question about that first step, whether he had a severe mental impairment. And in this case, and I think in many cases, we're not questioning that he had a diagnosed mental illness. That's clear from the record. The question is then the causation, whether that actually caused him or made it impossible for him to file the petition. So I don't think that there's actually any conflict between the Bills case and the Roberts case. And, in fact, in Bills, they didn't remand for another evidentiary hearing. The court simply said, now that we have clarified these legal standards, we're just going to remand it for the court, the district court, to apply those standards to the case in front of it. As I understand the procedure in this case, the petitioner filed the petition. The government moved to dismiss as untimely. The petitioner opposed, saying he was mentally incompetent. And then at that point, the court gave the petitioner the chance to get the records, right? Correct. And then after getting the records, then the court dismissed without prejudice that case, saying, if there's nothing more, that's where we are. Isn't that correct? In this case? In this case. Not exactly. The court dismissed without prejudice before we actually had gotten the records and briefed them. Okay. So then — And gave the petitioner the chance to get the records? Correct. And then the court reviewed the records? Yes. Yes. Once the parties had the records and we reviewed them and briefed this voluminous record, which we supplied in our supplemental excerpts of record, then we did a renewed motion to dismiss. The petitioner opposed, and at that point, the court dismissed it. And at no time — Did anybody ask for an evidentiary hearing? Never. The petitioner filed a total of five briefs, as did the Respondent in the district court, and at no time was an evidentiary hearing ever discussed or suggested. In fact, the petitioner said he thought the records alone would prove his point. We also thought that the records would prove our point, that for an eight-year period, he was functioning not just competently, but at a high level. So it was quite a surprise when we got the Ninth Circuit briefing, and for the first time, the petitioner was saying, no, what we actually need is an evidentiary hearing, when that was never raised in the district court. And the district court itself didn't indicate that it was having any problems comprehending these records and going through them and figuring out what they meant, especially where, as I was saying at the beginning, there's all this objective evidence that he was actually functioning at such a high level. So at this point — Did the petitioner ever proffer an expert? No. Never? No. So the petitioner didn't ask for a hearing, didn't proffer an expert. The first time we see this issue is now where he says we should have had a hearing. Correct. And what he's saying is that the district court should have sua sponte held a hearing. I understand what the — But for the reasons I said before in answering the previous question — Judge Hawkins' question. Judge Hawkins' question. I don't believe that the case law requires an evidentiary hearing in every case, and in every case where the defendant simply says I have a mental impairment. And if that were to be the case, it would be an extremely expensive and time-consuming process, because we have many cases where it's not a surprise that people who commit crimes are not well-adjusted human beings, and many of them have some kind of contact with the prison mental health system. And if all — But we don't have to worry about no evidence at all. There clearly was evidence of a mental impairment here, right? It was more than color. It was real. Yes. Yes. Whether it was factually connected to the inability to meet timelines is another question. Yes. And my point is that we don't necessarily need an evidentiary hearing in every case to make that determination. And, in fact, in the vast majority of cases, we can conduct that from a review of the records and make that determination. It's only in a very small percentage of cases, in my experience, where that evidence becomes questionable, where, for example, the person is constantly in the crisis bed or is having trouble functioning in their daily life for an extended period of time. I cannot resist saying to you, when you talk about cost, that a state that's willing to build a multimillion-billion-dollar high-speed train which will run from Modesto to Bakersfield should not be complaining about the cost of mental impairment hearings. That's above my pay grade. But all I can say — I suspect it is. But all I can say — She'll relay that to the governor. But we can certainly say that in a case like this — and, again, this is a very typical kind of case, where once you actually get all of these records and review them, you get a picture of the person's mental health and whether they were functioning sufficiently well to file a timely Federal habeas petition. And, again, in this case, all he had to do was fill out the form and copy his one claim from his State direct appeal onto the Federal form. That's all that was required in this particular case. So it was an easy task. Clearly, a person who was able to do all of these other things during this eight-year period would have been able to do that. And the district court's determination that, based on this record, he was not entitled to equitable tolling for 11 years was not clearly erroneous. Thank you for your argument. Thank you. I appreciate it. Case 12-17165, Orthell v. Yates, is submitted.
judges: Hawkins, Smith, Nguyen